IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| *Ex rel. Joseph Fleurival*, | * | Civil Action No. _____ |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | FILED *IN CAMERA* AND |
| | * | **UNDER SEAL** PURSUANT TO |
| COASTAL INTERNATIONAL | * | 31 U.S.C. § 3730(b)(2) |
| SECURITY, INC., | * | |
| | * | **DO NOT PLACE IN PRESS BOX** |
| & | * | |
| | * | **DO NOT ENTER ON PACER** |
| AKAL GROUP OF COMPANIES, LLC | * | |
| | * | GOVERNMENT CONTRACTOR FRAUD |
| Defendants, | * | AND RETALIATORY TERMINATION |
| | * | |
| | * | |
| | * | JURY TRIAL DEMANDED |
| | * | |

**************************************************************************

**PLAINTIFFS' COMPLAINT
PURSUANT TO 31 U.S.C. §§ 3729-3732 OF
THE FEDERAL FALSE CLAIMS ACT**

1. Plaintiff, Joseph Fleurival ("Relator") brings this *qui tam* action, on behalf of the United States of America ("the Government"), against Coastal International Security, Inc., ("Coastal"), and its parent company, AKAL Group of Companies, LLC, for its violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq.

2. The FCA violations alleged hereinafter are with respect to Coastal's continuous pattern of falsifying both the amount of time billed for security services and the number of security and supervising personnel used for the security services rendered under its contract with the Government. The Defendants fraud includes but is not limited to Defendants' falsification of log books, to reflect security services which were not actually rendered, and, subsequently,

1

submitting said falsified log books for payment under its contract with the United States Department of Homeland Security in addition to Coastal's usurping of time billed to the Government as security services when no security services were rendered, and such time was actually used to address Coastal's internal administrative affairs.

3.  Upon information and belief, the fraud to be set forth in this complaint was ongoing, pre-existed the Relator's observations, was witnessed by Relator from 2012 until September 2015, and resulted in losses to the Government, estimated to be in excess of $5,000,000, as a result of Coastal's overbilling the United States Department of Homeland Security for security services and supervisory services not rendered, or not rendered in the quantity billed.

4. Upon information and belief, none of the information contained in this complaint has been previously disclosed to the public.

5. Upon information and belief, Relator is the original source of the information which is the substance of the allegations contained in this complaint.

6. To the extent, if any, that this case is deemed to be a "related action" and to the extent, if any, that facts set forth herein are deemed to be the same as facts underlying an existing *qui tam* action under the FCA, per 31 U.S.C. 3730(b)(5), said factual allegations in common with any pending action that would cause this case to be a "related action" are hereby expressly excluded from this action, but only to the limited extent necessary to avoid the statutory prohibition.

7. Moreover, to the extent that the allegations or transactions set forth herein are the subject of civil suit or an administrative civil money penalty proceeding in which the United States is already a party, if any such proceedings exist, then the allegations or transactions referred to herein which are the subject of any such civil suit or administrative civil money

penalty proceedings are expressly excluded, but only for the specific time periods, specific companies, and/or specific allegations or transactions that are already the subject of the civil suit and/or administrative civil money penalty proceeding.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. § 3730(b), which allows a private person to bring suit for a violation of the FCA. Furthermore, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1345, which provides the District Courts with original jurisdiction over all civil actions brought by the Government. Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action is one brought under the laws of the United States.

9. This Court is the appropriate venue for this action, per 31 U.S.C. § 3732(a), as the transactions which are the subject of this complaint occurred in this judicial district. Moreover, venue is appropriate in this court, per 28 U.S.C. § 1391(b) and (c), because the Defendants are subject to personal jurisdiction in this district and/or reside in this district.

## PARTIES

10. Relator, Joseph Fleurival, was employed by Coastal as a Protective Security Officer ("PSO") and performed the duties commensurate with that position at the U.S. Food and Drug Administration's White Oak campus ("White Oak"), one of the sites Coastal was contracted to secure. Relator is represented in this action by Rhonda I. Framm, Esq. and the Law Office of Rhonda I. Framm.

11. Relator is an "original source," as that term is used in 31 U.S.C. § 3730(e)(4)(B), of the information set forth in this complaint. Relator has direct and independent knowledge of

3

those facts alleged in this complaint and did, prior to the filing of this action, voluntarily disclose the same to the U.S. Attorney's Office for the District of Maryland, Northern Division.

12.   Defendant Coastal is a contractor of security services headquartered in South Carolina, registered to do business in Maryland, with an office in Upper Marlboro, Maryland, and is a subsidiary of Defendant AKAL Group of Companies.

## APPLICABLE LAW

13. Under the FCA, liability attaches to any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]" 31 U.S.C. § 3729(a)(1)(A)-(B).

14.  For the purposes of the FCA, "the terms 'knowing' and 'knowingly' . . . mean that a person, with respect to information – (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information[.]" 31 U.S.C. § 3729(b)(1)(A).

15.   Any person found to have violated the FCA "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1).

16.   The FCA also prohibits the discharge, demotion, suspension, threatening, or harassing of an employee because of lawful acts done by said employee in furtherance of efforts to stop one or more violations of the FCA. 31 U.S.C. § 3730(h).

## COUNT 1
## VIOLATIONS OF THE FALSE CLAIMS ACT

17.  On June 30, 2014, Coastal was awarded Contract No. HSHQEC-14-D-00006 by the United States Department of Homeland Security, attached hereto as "Exhibit 1." The contract was to take effect on October 1, 2014 and, depending on options exercised, could run until March 31, 2020. This is believed to be a continuation, under similar terms, of the contracts which preceded it with this Defendant and the Government from and before 2012.

18.  Under Contract No. HSHQEC-14-D-00006, Coastal was to provide "protective security officer services" at a number of sites, one of which was White Oak.

19.  Upon information and belief, Coastal knowingly falsified PSO log books to reflect various posts at White Oak as having been secured by a PSO, or a certain number of PSOs, when no PSO, or fewer than the number of PSOs specified in the pertinent log book, had staffed the indicated post(s). Coastal also knowingly falsified log book entries regarding, the number of persons supervising the PSO(s) at each post, the work performed by supervisors and employees of Coastal, the number of persons who were charged with relieving other posts, and did otherwise commit fraud against the Government.

20.  Upon information and belief, the above-noted understaffing of security posts led to at least one breach of security in which a visitor to the White Oak campus was able to pass through the lobby of one of the campus' buildings and gain access to the FDA offices.

21.  Upon information and belief, Coastal supervisors regularly signed log books as though they had secured a post when, in fact, they had not done so and, instead, had spent the indicated time in the security office.

22.  Upon information and belief, Coastal supervisors regularly instructed specific PSOs to carry out a "roving post" so that the "roving" PSO could be called upon to deliver log books to

PSOs elsewhere at White Oak for the purpose of having them sign-in to posts other than the ones they actually occupied.

23.  Upon information and belief, on one occasion, Relator noticed a log book that reflected a security post as having been occupied for longer than the noted PSO had been present, and so Relator made a notation in said log book which stated that such conduct was "stealing time."

24.  Upon information and belief, there were regularly occasions where PSOs were signed-in to multiple posts simultaneously.

25.  Upon information and belief, Coastal log books regularly reflected that PSOs had been relieved when, in fact, no relief had occurred and the noted PSO had occupied his/her post during the time at which relief was supposed to have been given.

26.  Upon information and belief, Coastal log books regularly reflected that a PSO had provided relief when in fact that relief had been provided by a different PSO.

27.  Upon information and belief, Coastal's security log books regularly reflected that a PSO had been relieved when in fact the relieving PSO was actually occupying a different security post.

28.  Upon information and belief, on at least one occasion, Relator occupied a security post and then later saw that his signature had been forged to reflect that he had been relieved when such relief had not occurred.

29.  Upon information and belief, there was at least one security post which seemed to be reserved for Coastal supervisors who routinely signed-in to said post without actually occupying it.

30. Upon information and belief, it was common practice for a PSO or supervisor to be signed-in to a "roving post" and then not actually perform any sort of post duties.

31. Upon information and belief, Coastal's practice of keeping security log books with false entries, and generally defrauding the Government, was not limited to the examples stated above, was continuing in nature, was carried out at the direction of Coastal's Project Manager at White Oak, Paul Caruso, and continues to the present.

32. Upon information and belief, PM Caruso was charged with confirming the accuracy of Coastal's PSO log books, regularly did so despite his knowledge to the contrary, and, presumably, continues the indicated conduct to the present.

33. Upon information and belief, Coastal's supervisors at White Oak were complicit in the falsification of log books and intimidated PSOs who were reluctant to comply with the scheme.

34. Upon information and belief, the noted practice of falsifying log books, in addition to Coastal's practice of using time billed to the Government for internal administrative actions solely for Coastal's benefit, intentionally caused Coastal to be paid for PSO services that it was contracted to provide, but which were not rendered. Further, the artificially inflated volume of security services provided would have contributed to the Government's annual decision to exercise its option of retaining Coastal as the provider of security services at White Oak.

35. Coastal's falsification of log books, ongoing diversion of supervisory time to work on Coastal's internal administrative matters, and failure to provide the supervisory and relief labor required under the subject contract caused the Government to pay, or approve, false claims related to a Government contract, in violation of 31 U.S.C. § 3729(a)(1), and incur losses with respect to those services for which it contracted but did not receive.

36. Under Contract No. HSHQEC-14-D-00006, Coastal was to be paid $15,344,068.48 for services to be provided at White Oak during the period of October 1, 2014 until September 30, 2015. Under the same contract, Coastal was to be paid $14,904,866.72 for services to be provided during the period of October 1, 2015 until September 30, 2016. It is believed that Coastal's prior contracts, dating back to October of 2009 when Coastal was first contracted to provide PSO services at White Oak, obligated Coastal to provide the same or similar services for the same or similar amount of compensation, and that during such time Coastal defrauded the Government in a manner similar to that described in this complaint.

37. By reason of the false claims described in this complaint, the Government suffered damages in the amount equal to the portion of services it paid for but which Coastal did not provide from at least 2012 to the present, and continuing, and likely suffered such damages during previous contracts dating back to October of 2009 when Coastal was first contracted to provide PSO services at White Oak.

## COUNT II
## RETALIATORY TERMINATION IN VIOLATION OF 31 U.S.C. § 3730(h)

38. Relator incorporates by reference the allegations described in paragraphs 1-37 as if fully set forth herein.

39. Relator was terminated from his employment with Coastal on September 14, 2015.

40. That prior to termination of Relator's employment, Relator had been engaging in the lawful acts of personally investigating and collecting evidence with respect to Coastal's practice of falsifying PSO log books to reflect a much greater amount of PSO services than had actually been rendered.

41. That the noted acts of Relator did raise a distinct possibility of a *qui tam* suit under the FCA.

8

42. That Coastal was aware of Relator's lawful efforts to investigate and document the fraudulent entries in PSO log books, that Relator communicated his knowledge of the above-described illegal activity to the Defendants, and that, subsequently, Coastal terminated Relator's employment in retaliation for his lawful efforts to investigate and document the scheme of fraud being perpetrated by Defendants; a termination which violated 31 U.S.C. § 3730(h).

43. Separate from the illegality of terminating Relator's employment in retaliation for his lawful efforts to investigate and document Defendants' above-summarized scheme to defraud the Government, the subject termination ran contrary to the Code of Ethics and Business Conduct, attached hereto as "Exhibit 2," of Coastal's parent company, the AKAL Group of Companies, which encourages employees to report activity that results in false claims of services provided.

44. Moreover, the termination of Relator's employment was a clear violation of the following provision of the AKAL Group of Companies' Code of Ethics and Business Conduct:

> In accordance with applicable laws, the Akal Group prohibits retaliation against any individual for: (1) reporting a matter internally or externally that the employee, in good faith, believes to be a violation of this Code or any law, rule, or regulation; (2) cooperating with an internal investigation; or (3) cooperating with an external or government led investigation. Retaliation itself is considered by the Company to be a violation of this Code.

45. As a direct and proximate result of the termination of Relator's employment, which, as stated, violated both company policy and applicable federal law, Relator has suffered emotional pain and mental anguish, as well as serious economic hardship stemming from lost wages and benefits.

**WHEREFORE**, Relator respectfully requests this Court to enter judgment against defendant, as follows:

(a)     That, per 31 U.S.C. § 3729, damages be awarded to the Government in an amount not less than three times the damages sustained due to the false claims and fraud

scheme alleged in this Complaint, from the earliest date that the ensuing investigation finds the fraud to have commenced until the judgment is rendered;

(b)     That civil penalties in the maximum amount allowed by law be imposed for each occurrence wherein Coastal presented a false claim to the Government, from the beginning of Coastal's first contractual terms with the Government, in which Coastal defrauded the Government;

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, court costs, fees and expenses which the Relator necessarily incurred in bringing and proceeding with this action;

(d)     That the Court grant permanent injunctive relief to prevent any recurrence of the FCA for which redress is sought in this Complaint;

(e)     That the Relator be awarded the maximum amount allowed to him pursuant to the FCA;

(f)     For Count II, that Relator be granted all relief necessary to make him whole, including but not limited to reinstatement, the maximum amount allowed by statute but in no case less than two times his back pay, his front pay and prerequisites, his counsel fees, interest, and all other compensatory damages sustained as a result of his Coastal's retaliatory termination of his employment; and

(g)     That this Court award such other and further relief as it deems proper by statute and under common law.

## DEMAND FOR JURY TRIAL

Relator, on behalf of himself and the Government, demands a jury trial on all claims set

forth in this Complaint.

Respectfully submitted,

Rhonda I. Framm, Esq.
Federal Bar No.: 00071
10451 Mill Run Circle, Suite 1050
Owings Mills, Maryland 21117
(410)654-3399
RIF55@aol.com
*Attorney for Relator*

11

## Certificate of Service

The undersigned hereby certifies that a copy of the Complaint in this matter was served on the following individuals by First Class, Certified, U.S. Mail, postage paid on this 36th day of March 2016:

Loretta Lynch, Esquire
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

Rod J. Rosenstein, Esquire
U.S. Attorney
District of Maryland
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

Rhonda I. Framm Esq.
Federal Bar No.: 00071
10451 Mill Run Circle, Suite 1050
Owings Mills, Maryland 21117
(410)654-3399
RIF55@aol.com
*Attorney for Relator*